UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANGIE K. SLATER,<br><br>                      Plaintiff,<br>      v.<br><br>BEHAVIORAL HEALTH RESOURCES,<br>a non-profit corporation, and JOHN AND<br>JANE DOES 1-10,<br><br>                      Defendants. | CASE NO. 23-5270 RJB<br><br>ORDER ON MOTION FOR<br>RECONSIDERATION |

      This matter comes before the Court on Defendant Behavioral Health Resources' ("Behavioral Health") Motion for Reconsideration. Dkt. 26. The Court has considered the pleadings filed regarding the motion and the remaining record.

      In this case, the Plaintiff, Angie Slater, alleges that Behavioral Health violated her right against religious discrimination contrary to 42 U.S.C. § 2000e-2 ("Title VII") and the Washington Law Against Discrimination, RCW 49.60.180, *et. seq.* ("WLAD") when it terminated her employment after she failed to receive a COVID-19 vaccination. Dkt. 1.

Behavioral Health moved for summary judgment on Plaintiff's claims. Dkt. 14. On August 12, 2024, the Court denied the motion. Dkt. 24. Behavioral Health filed the pending motion for reconsideration. Dkt. 26. Ms. Slater was given leave to, and did, respond (Dkt. 28), and Behavioral Health filed a reply (Dkt. 29). For the reasons provided below, Behavioral Health's motion for reconsideration (Dkt. 26) should be granted, the August 12, 2024 order (Dkt. 24) vacated, Behavioral Health's motion for summary judgment (Dkt. 14) granted, and Plaintiff's claims should be dismissed.

## **MOTION FOR RECONSIDERATION**

W.D. Wash. Local Civil R. 7(h)(1) provides that "[m]otions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence."

In its motion for reconsideration, Behavioral Health points to two sources of errors it contends were in the order denying its motion for summary judgment: (1) that the Court improperly considered inadmissible evidence and (2) did not apply the correct standard to its undue hardship defense. Dkt. 26.

Behavioral Health's motion for reconsideration (Dkt. 26) should be granted. The Court, relying on Ms. Slater's briefing, considered evidence that was not in the record. The Court should reconsider its August 12, 2024 decision denying Behavioral Health's motion for summary judgment (Dkt. 24) relying on admissible evidence and applying the correct standard to Behavioral Health's undue hardship defense. For the reasons provided below, the August 12, 2024 order (Dkt. 24) should be vacated. This order will replace the August 12, 2024 order and will consider Behavioral Health's motion for summary judgment (Dkt. 14).

ORDER ON MOTION FOR RECONSIDERATION - 2

**MOTION FOR SUMMARY JUDGMENT**

**I.   FACTS**

Beginning in February of 2020, Washington State Governor Jay Inslee declared a state of emergency and issued several public health and safety proclamations related to the COVID-19 pandemic. *Flower World, Inc. v. Sacks*, 43 F.4th 1224, 1227 (9th Cir. 2022).  Even after vaccines became available, the pandemic continued, with the virus mutating into various strains. *Does 1-6 v. Mills*, 16 F.4th 20, 26 (1st Cir. 2021)(*cert. denied sub nom*. *Does 1-3 v. Mills,* 142 S. Ct. 1112 (2022)).  In the United States, the summer of 2021 saw the emergence of a highly contagious COVID variant referred to as the "Delta" variant. *Id.*

Defendant Behavioral Health is a mental health and addiction recovery services provider that remained open during the COVID-19 pandemic. Dkt. 18 at 1 (Declaration of Behavioral Health CEO Laurie Tebo).  Its patients included individuals who were considered to be at high risk for severe COVID. *Id*.  Once vaccines for COVID-19 became available, it encouraged employees to receive a vaccination. *See e.g.* Dkt. 18-7 at 2 (July 2, 2021 email from Tebo to Behavioral Health employees).

Ms. Slater was an office specialist for Behavioral Health whose duties included providing in-person customer service support in the reception area, greeting patients, helping them with their paperwork, collecting payments from patients, preparing charts, maintaining supplies in the reception area, distributing mail, and participating in meetings. Dkt. 18-3 at 2-3 (description of office specialist position signed by Ms. Slater on November 21, 2017).  Her office space was behind a reception desk that was connected to both the intake lobby and children's lobby. Dkt. 15-1 at 7-8 (Ms. Slater's deposition).

On August 5, 2021, Laurie Tebo of Behavioral Health reached out by email to Ms. Slater and others because they had not submitted proof of vaccination. Dkt. 18-13. Ms. Slater responded by email on August 9, 2021 with various reasons why she objected to receiving the vaccine. Dkt. 18-14.

On August 20, 2021, Gov. Inslee issued Proclamation 21-14.1, "Covid-19 Vaccination Requirement," ("Proclamation") which required state workers, workers in an education setting, and healthcare providers to be fully vaccinated by October 18, 2021, unless they qualified for medical or religious exemptions. Dkt. 15-2. It is undisputed that Ms. Slater was considered a "healthcare provider" under the Proclamation.

On August 31, 2021, Ms. Slater submitted a religious exemption request. Dkt. 18-15. On September 21, 2021, Behavioral Health approved Ms. Slater's religious exemption request in a letter and informed her that it would review whether a reasonable accommodation was possible. Dkt. 17-1 at 2. She was advised that if she had questions, she could contact human resources. *Id.*

Relying on guidance from public health authorities, Behavioral Health considered whether Ms. Slater could safely perform her job duties with the accommodations of wearing a mask, socially distancing, and testing for COVID-19 without putting the health and safety of other co-workers and patients at risk. Dkts. 17 at 1 (Behavior Health Chief Operating Officer Ian Harrel's Declaration); 19-1 at 21-22 (Harrel Deposition). It concluded that it could not allow an unvaccinated employee around others without increasing the risk of transmitting COVID-19 in the workplace, even if the employee was wearing a mask, social distancing, and testing. Dkt. 17 at 1-2. Behavioral Health considered whether there were open positions for which Ms. Slater

ORDER ON MOTION FOR RECONSIDERATION - 4

was qualified and found there were none. *Id.* at 2. It also concluded that she could not perform the basic functions of her job remotely. *Id.*

In a September 23, 2021 letter, Behavioral Health informed Ms. Slater that it was unable to provide her with reasonable accommodation and so her employment would be terminated October 18, 2021. Dkt. 17-4. In response to Ms. Slater's union's grievance of her separation, Behavior Health explained that considering the "contagious nature of new variants, masking and social distancing do not provide enough protection in a health care setting . . . [Behavioral Health] cannot take the risk for . . . staff members, our clients and other staff members to be unvaccinated in open client and staff areas." Dkt. 17-2 at 2. It further noted that it considered all possible accommodations, including masking, social distancing, and testing. *Id.* Behavioral Health noted that testing (which would be at its expense and include the cost of the tests, time to take the test, time to wait for the results "in combination with other factors of time off") was more than a de minimis cost. *Id.*

## II.     DISCUSSION

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, which is a preponderance of the evidence in most civil cases. *Anderson* at 254; *T.W. Elect.* at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.* at 630 (relying on *Anderson* at 255). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888–89 (1990).

**B. TITLE VII, WLAD, AND BEHAVIORAL HEALTH'S SHOWING OF UNDUE HARDSHIP**

The same burden-shifting framework is used to analyze failure to accommodate religious belief claims under both Title VII and the WLAD. *See Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023); *Kumar v. Gate Gourmet, Inc.,* 180 Wash.2d 481, 489 (2014). Ms. Slater's Title VII and WLAD claims will be considered together using this two-step process.

**Step 1**. First, an employee like Ms. Slater must set forth a prima facie case of failure to accommodate religion. *Bolden-Hardge* at 1222. To demonstrate a prima facie case, an

ORDER ON MOTION FOR RECONSIDERATION - 6

employee must show, among other things, that they hold a "bona fide religious belief" which conflicts with an employment requirement.  *Id.*  Behavior Health argues that Ms. Slater has failed to meet this portion of her prima facie case.  Dkt. 14.

The evidence is sharply disputed about the question of whether Ms. Slater's objection to vaccination was based on a "bona fide religious belief."  Her assertions are supported by her own testimony in her deposition (Dkt. 19-1 at 31 and 37).  Ms. Slater has pointed to sufficient facts at issue regarding her bona fide religious beliefs being a basis to avoid vaccination.

**Step 2.**  Second, if the employee is successful, the burden shifts to the employer to demonstrate "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship."  *Id.* at 1224.  Behavioral Health asserts that it could not reasonably accommodate Ms. Slater without undue hardship.  Dkts. 14, 20, 26 and 29.  As an affirmative defense, Behavioral Health bears the burden of proof at the second step.  *See Bolden-Hardge* at 1222.

To establish that reasonable accommodations would impose undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business."  *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).  After *Groff,* district courts have continued to consider both economic and non-economic costs (like cost to an employer's mission and potential safety risks) when analyzing employers' claims of undue hardship.  *See e.g., Lavelle-Hayden v. Legacy Health*, 3:22-CV-01752-IM, 2024 WL 3822712, at *10 (D. Or. Aug. 14, 2024)(COVID-19 safety risk unvaccinated worker was to other workers part of cost in undue hardship analysis); *Bordeaux v. Lions Gate Entm't, Inc.*, 703 F. Supp. 3d 1117, 1135-36 (C.D. Cal. 2023)(finding undue hardship

where accommodating COVID-19 vaccine exemption would have created safety risk to other workers and replacing coworkers who became sick would have been expensive).

Considering the admissible evidence, Behavioral Health has demonstrated that it could not reasonably accommodate Ms. Slater without undue hardship.  The Plaintiff has failed to point admissible evidence to the contrary.

Behavioral Health states that, as a provider of healthcare services, it closely monitored the pandemic so that it "could take all necessary steps to protect the health and safety of [its] employees and clients."  Dkt. 18 at 1.  In assessing the risks of continuing to employ unvaccinated workers in office positions like Ms. Slater's, Behavioral Health states that it relied on guidance from public health organizations.  Dkts. 17 at 1; 18 at 1-2; 19-1 at 21-22.  It states that it considered accommodations for Ms. Slater such as masking, social distancing, and testing for COVID.  Dkts. 17 at 1; 19-1 at 21-22.  It also considered whether it could accommodate her by allowing her to work from home or whether there were other open positions for which she was qualified.  Dkt. 17 at 2.

In support of its decision to decline to accommodate Ms. Slater, Behavioral Health also points to the opinion of John B. Lynch, MD, MPH, a board certified physician in infectious disease, Professor of Medicine at the University of Washington School of Medicine, an Associate Medical Director at Seattle's Harborview Medical Center (in charge of the Center's Infection Prevention & Control, Antimicrobial Stewardship, Employee Health, and Sepsis program), who discusses the risks and viability of various accommodations.  Dkt. 16.  Dr. Lynch did not have personal contact with Ms. Slater but, in forming his opinion, reviewed several documents  including Ms. Slater's deposition, the Complaint, her job description, images taken and produced by Ms. Slater of her office space, and various emails, letters, and text messages.

ORDER ON MOTION FOR RECONSIDERATION - 8

*Id.* While his opinion was formed around two and a half years after Ms. Slater was fired, he clarifies that his opinion is based on what was occurring in the late summer/fall of 2021. *Id.*

Dr. Lynch notes that in August of 2021 (around the time of the Proclamation and these events) COVID-19 cases were spiking due to the Delta variant despite other strategies that were in place. *Id.* at 13. Dr. Lynch further noted that data at the time indicated that the Delta variant was more infectious and that unvaccinated individuals were likely infectious for longer than vaccinated individuals. *Id.* Unvaccinated people were ten times more likely to be hospitalized and eleven times more likely to die. *Id.* at 13-14.

Dr. Lynch explains that the understanding of COVID-19 transmission was changing from droplet-mediated form to an aerosol-form of transmission in 2021. *Id.* According to Dr. Lynch, "[a]erosol transmission implied that infections could occur over greater distances than previously thought and in spaces that were previously inhabited by individuals with COVID-19." *Id.* at 15. Dr. Lynch states that based on the data at the time related to COVID-19's aerosol transmission, the 6-foot social distancing rule was not applicable. *Id.* at 21. Further, Dr. Lynch opines that Ms. Slater's acknowledgment in her deposition that she did not always wear her mask and had to be told to do so (Dkt. 15-1 at 33-34), increased the potential for her generating an aerosol that could transmit COVID-19, if she was infected, even if she put her mask in place when others were present. *Id.* Dr. Lynch opines that testing does not eliminate the risk of spreading COVID. *Id.* at 10. He notes that tests are not 100% accurate, there are issues with timing (e.g. taking a test, contracting COVID while waiting for the test, and spreading it at work before the next test), and in the fall of 2021, there were shortages of tests. *Id.* at 11. He opined that, in the fall of 2021, "an unvaccinated person posed materially higher risks of transmitting COVID-19,

ORDER ON MOTION FOR RECONSIDERATION - 9

contracting COVID-19, and developing severe disease compared with a vaccinated person." *Id.* at 22. He contends that the "risks were greater both locally and nationally." *Id.*

After considering Ms. Slater's job duties, Dr. Lynch opines that had Behavioral Health "allowed her to continue working as an unvaccinated office specialist, it would have significantly increased the risk that she would infect members of the public, [Behavioral Health's] customers, and her co-workers with the virus or contract COVID-19 herself." *Id.* at 22-23. He concludes that "there was no reasonable accommodation from the COVID-19 mandate that would sufficiently mitigate or eliminate the risk associated with an unvaccinated employee performing the essential functions of Ms. Slater's position." *Id.* at 22.

Behavioral Health has shown that accommodating Ms. Slater as an office specialist would have created significant costs to it in the form of unnecessary substantial health and safety risks to its patients and Ms. Slater's coworkers. These costs would have resulted in undue hardship to Behavioral Health in the fall of 2021. In response to the motion for summary judgment, Ms. Slater fails to point to issues of fact regarding whether reasonably accommodating her would cause undue hardship for Behavioral Health. In her deposition she testified that wearing a mask at work did not affect her ability to serve Behavioral Health's patients or to work with co-workers. Dkt. 19-1 at 8. Ms. Slater's testimony does not negate Behavioral Health's showing regarding the heightened risk she posed to patients or co-workers or about Behavioral Health's undue hardship. Unlike Dr. Lynch, there is no showing that she was qualified to render an opinion about the health and safety risks she posed to Behavioral Health's patients and her coworkers due to her unvaccinated status in the fall of 2021. She fails to point to issues of fact regarding the cost to Behavioral Health.

1    In addition to considering whether she could be accommodated by allowing her to wear a
2 mask, social distance, and test, at the time it denied her request, Behavioral Health also
3 considered whether it could accommodate Ms. Slater by having her work remotely or whether
4 she qualified for a different open position that could be performed remotely.  Dkt. 17 at 2.  It
5 concluded that she could not perform the basic functions of her job remotely and that there were
6 no open remotely-performed jobs for which she was qualified.  *Id.*

7    Behavioral Health has shown that accommodating Ms. Slater would result is significant
8 economic and non-economic costs.  It has demonstrated that it could not reasonably
9 accommodate Ms. Slater without undue hardship in the fall of 2021.

10   **C.  CONCLUSION**

11   Considering the information available to it at the time and Ms. Slater's job duties,
12 Behavioral Health has demonstrated that reasonably accommodating Ms. Slater would have
13 resulted in undue hardship.  The accommodations' economic and non-economic costs (including
14 the significant increased health and safety risk she posed as an unvaccinated worker to
15 Behavioral Health's patients and to her coworkers) would have resulted in an undue hardship to
16 Behavioral Health.  *Lavelle-Hayden* at 10; *Bordeaux* at 1135-36.  Ms. Slater failed to point to
17 issues of material fact on this issue.  Behavioral Health has shown that it is entitled to a judgment
18 as a matter of law – the undue hardship defense is a complete defense to WLAD and Title VII
19 failure-to-accommodate claims.  *See* 42 U.S.C. § 2000e(j); *Kumar* at 501-02; *Williams v. Legacy*
20 *Health,* 3:22-CV-6004-TMC, 2024 WL 3993162 (W.D. Wash. Aug. 29, 2024).  Accordingly,
21 Behavioral Health's motion for summary judgment (Dkt. 14) should be granted and Ms. Slater's
22 claims dismissed.

23

24

# ORDER

It is **ORDERED** that:

- Behavioral Health's Motion for Reconsideration (Dkt. 26) **IS GRANTED;**

- The Court's August 12, 2024 Order (Dkt. 24) **IS VACATED**;

- Behavioral Health's Motion for Summary Judgment (Dkt. 14) **IS GRANTED**;

  and

- Plaintiff Angie Slater's claims **ARE DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 25th day of September, 2024.

ROBERT J. BRYAN
United States District Judge